**FILED**

2005 Oct-03  PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

JAMES EDWARD HEATH,                )
                                   )
            Plaintiff,             )
                                   )
vs.                                )            4:00-cv-02729-RBP-TMP
                                   )
DENNIS LOVVORN, ET AL.,            )
                                   )
            Defendants.            )

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. § 1983 in which the plaintiff, James Edward

Heath, alleges that his constitutional rights were violated while he was incarcerated at the St. Clair

Correctional Facility in Springville, Alabama. The *pro se* complaint was filed on September 27,

2000, naming as defendants Correctional Officer Dennis Lovvorn, Lieutenant Patrice Richie,

Sergeant Allan Cushing, and Warden Ralph Hooks.[1]  Plaintiff seeks monetary damages and

injunctive relief.

On April 17, 2002, the court entered an Order for Special Report directing that copies of the

complaint filed in this action be forwarded to each of the named defendants and requesting that they

file a special report responding to the factual allegations of the complaint.  On June 19, 2002,

defendants Richie and Cushing filed their special report attaching documents and their affidavits.

Plaintiff filed a response on November 5, 2002. On March 18, 2003, the court entered an Order for

---

[1] It is noted that although plaintiff originally named Warden Steve Dees as a defendant in this action, he was allowed to substitute Warden Ralph Hooks as a defendant upon the death of defendant Dees (Doc. # 13).

Special Report directing that a copy of the complaint filed in this action be forwarded to defendant Hooks and requesting that he file a special report responding to the factual allegations of the complaint. On August 28, 2003, defendant Hooks filed his special report attaching documents and his affidavit. On October 1, 2003, defendant Lovvorn filed a response and affidavit  and on December 15, 2003, defendant Lovvorn filed a special report attaching his affidavit. By Order of February 3, 2004, the parties were notified that the special reports filed by the defendants would be construed as  motions for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the *Federal Rules of Civil Procedure*.  Plaintiff filed a response on February 20, 2004.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law.  Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted).


<u>FACTS</u>

Applying these standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, have been taken in a light most favorable to the plaintiff. On July 5, 2000, plaintiff was on his way to religious services and was stopped by defendant Lovvorn (plaintiff's complaint page four and plaintiff's affidavit Doc. # 10 ). Plaintiff was carrying a brown bag which contained a bag of coffee, cups, sugar, and creamers (plaintiff's affidavit Doc. # 10). Defendant Lovvorn was performing his duties as G Yard roving patrol when he observed plaintiff entering the G Yard after chapel call had been announced (defendant Lovvorn's affidavit page one).  As plaintiff headed toward the gate on the G Yard, defendant Lovvorn called plaintiff over to him.  Defendant

Lovvorn asked plaintiff for the bag that plaintiff was carrying. Plaintiff complied with defendant Lovvorn's request by giving him the bag. Defendant Lovvorn looked in the bag and asked plaintiff what he was doing with the items (plaintiff's affidavit Doc. # 10). Plaintiff explained that he was taking them to the religious services he was about to attend. A discussion ensued regarding the bag and it ended with defendant Lovvorn spraying plaintiff with a chemical agent (plaintiff's complaint pages four and attached page and defendant Lovvorn's affidavit page two). After plaintiff was sprayed, other inmates were ordered away from the area and other officers arrived (Defendant Lovvorn's affidavit page two). Officer Jacky Mashburn was on the G Yard and witnessed the incident. Defendant Lovvorn and Officer Mashburn escorted plaintiff directly to the infirmary for treatment (defendant Cushing's affidavit page one and defendant Lovvorn's sworn statement Doc. # 22). According to the body chart completed in the infirmary, plaintiff's eyes were flushed with clear water and no cuts, marks, or bruises were noted at the time of treatment (Emergency Treatment Record attached as an exhibit to defendants Richie and Cushing's special report). At approximately 7:25 p.m., defendant Lovvorn advised defendant Cushing who was assigned as Population Sergeant about the incident with plaintiff (defendant Cushing's affidavit page one). Plaintiff was then taken to Segregation Cell K-19 for rules violations (defendant Lovvorn's affidavit page two). Defendant Cushing had plaintiff placed into a single cell in the Segregation Unit. Plaintiff was charged with Creating a Security Hazard (defendant Cushing's affidavit page one). At no time did defendant Cushing take any property from plaintiff. All of plaintiff's property was stored in the Segregation Unit property room.

<u>DISCUSSION</u>

<u>OFFICIAL CAPACITIES</u>

Plaintiff has sued the defendants in their official capacities, however, they are employees of the State of Alabama and cannot be held liable in damages, in their official capacities, for their own acts or those of their employees because they enjoy Eleventh Amendment immunity.  Such officers are entitled to dismissal of any claims for damages brought against them in their official capacities as state officials.  The United States Supreme Court has stated:

> [T]here can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.  *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945); *Worcester County Trust Co. v. Riley*, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed.2d 269 (1937).  Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  To the extent they are sued in their official capacities, the suit against the defendants is a suit against the state.  There has been no consent or waiver in this action; thus, the defendants, in their official capacities, are absolutely immune from damages liability in this action.

<u>INDIVIDUAL CAPACITIES</u>

<u>Excessive Use of Force</u>

Plaintiff's first claim is that on July 5, 2000, defendant Lovvorn used unnecessary and excessive force upon him by spraying him with a chemical agent without provocation or reason. The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner

5

is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Supreme Court held in *Hudson v. McMillian*, 112 S. Ct. 995 (1992), that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S. Ct. at 999. In extending *Whitley* to all cases involving allegations of force, the Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that " `[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' "

*Id*. at 998-9 (citations omitted). With these concerns in mind, the Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary. They include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. The *Hudson* Court made it clear that the extent of injury suffered by the inmate is only one of the many factors which should be considered, not a decisive one when it said, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id*. at 999.

The parties agree that on July 5, 2000, an incident occurred during which defendant Lovvorn sprayed plaintiff with a chemical agent. According to plaintiff, the use of force was unnecessary and unprovoked. Plaintiff contends that he encountered defendant Lovvorn on G Yard on his way to religious services. Plaintiff contends that defendant Lovvorn told him to come to him and he complied. Plaintiff contends that defendant Lovvorn asked plaintiff to give him the bag he was carrying and he complied. Plaintiff states that defendant Lovvorn then told him that he was taking the items in the bag and that plaintiff needed to take it up with defendants Cushing and Richie (plaintiff's affidavit Doc. # 10). Plaintiff states that he then asked defendant Lovvorn where defendants Cushing and Richie were. Plaintiff contends that at this point, defendant Lovvorn pushed him and sprayed him with a chemical agent. According to defendant Lovvorn, he was performing his duties as G Yard roving patrol when he observed plaintiff entering the G Yard after chapel call had been announced (defendant Lovvorn's affidavit page one). Defendant Lovvorn contends that he gave plaintiff a direct order to return the sack to his cell and then proceed to chapel (defendant Lovvorn's sworn affidavit page one).  He contends that plaintiff wanted to know why he could not bring the items to the chapel and then stepped toward him in a threatening manner (defendant Lovvorn's affidavit page one).  Defendant Lovvorn states that he then pushed plaintiff (defendant Lovvorn's affidavit page one). Defendant Lovvorn states that he then pulled his Freeze XP out (defendant Lovvorn's affidavit page one). He states that plaintiff stated "you want to spray me with that stuff" and again stepped toward him (defendant Lovvorn's affidavit page one). Defendant Lovvorn states that it was at this point that he sprayed plaintiff  with the chemical agent (defendant Lovvorn's affidavit page two). The parties agree that plaintiff was immediately escorted to the infirmary for treatment after he was sprayed. According to the body chart completed in the infirmary,

plaintiff's eyes were flushed with clear water and no cuts, marks, or bruises were noted at the time of treatment (Emergency Treatment Record attached as an exhibit to defendants Richie and Cushing's special report). Although plaintiff claims to have experienced problems with his vision as a result of being sprayed, he has offered no evidence to support his allegation. He states that he has been to the infirmary to complain about his vision, but he failed to submit any request for medical treatment, treatment records, or any other medical records to support his claim.

Defendant Lovvorn has raised the defense of qualified immunity.  Government officials exercising a discretionary function are entitled to a qualified immunity from damages unless their acts or decisions contravene clearly established constitutional or statutory rights of which a reasonable official should know.  *See Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  The "contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).  As the Eleventh Circuit has explained, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates the law *in the circumstances*."  *Lassiter v. Alabama A&M University*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original); *McCoy v. Webster*, 47 F.3d 404 (11th Cir. 1995).  Qualified immunity is the norm, not the exception.  *See id.*  Once the defendant establishes that the act or decision complained of was within his discretionary function, the burden

8

of proof shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law.  *See Sammons v. Taylor*, 967 F.2d 1533 (11th Cir. 1992) (citing *Zeigler v. Jackson*, 716 F.2d 847 (11th Cir. 1983)); *McCoy v. Webster*, supra.

An officer is entitled to qualified immunity in an excessive force claim, "unless application of the [excessive force] standard would inevitably lead every reasonable [official] in [the officer's] position to conclude the force was unlawful. *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997), *citing Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).  The excessive force standard looks to (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Moore v. Gwinnett County*, 967 F.2d 1495, 1498  (11th Cir. 1992)(*quoting Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986)).

Viewing the facts in a light most favorable to the plaintiff, it is clear that the application of the excessive force standard would not inevitably lead an official in defendant Lovvorn's position to conclude that the amount of force he used was unlawful.  Even if it were determined that the use of force was  unnecessary, the actual force used and the injury inflicted were both minor and summary judgment based on qualified immunity is appropriate.

Religious Reasons

Plaintiff next claims that defendant Lovvorn sprayed him with the chemical agent because of his religious beliefs and practices and in furtherance of a policy of harassment directed at members of the Yahweh Temple. Defendant Lovvorn does not specifically address this claim in his affidavit. Defendant Lovvorn contends that he sprayed plaintiff with the chemical agent because plaintiff had twice stepped toward him in a threatening manner. The court notes however that

although plaintiff filed numerous documents in addition to his complaint including affidavits, no where in any of those documents does he contend that defendant Lovvorn mentioned anything about plaintiff's religion during this incident. Plaintiff's specific claim is that defendant Lovvorn sprayed him with the chemical agent "in a manner that was directed at the religious and beliefs and practices and in furtherance of a policy of harassment directed at members of the YAHWEH Temple which operates at the facility, in which the Plaintiff is a member" (plaintiff's complaint pages three and four). Plaintiff has presented no evidence to support this claim. Plaintiff simply assumes without proof that defendant Lovvorn had ulterior motives related to religion for spraying him with the chemical agent. Defendant Lovvorn is entitled to summary judgment on this claim because plaintiff's allegations are vague and conclusory, Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976). Even a *pro se* plaintiff "must allege facts, not legal conclusions." *Hanson v. Town of Flower City*, 679 F.2d 497, 504 (5th Cir. 1982).

Policy of Encouraging the Use of Excessive Force Upon Inmates

Plaintiff's next claim is that defendants Richie, Cushing, and Hooks' indifference toward the excessive use of force by correctional officers at the prison has created an environment where repeated occurrences of excessive use of force have become part of the policy and practices of officers under their command. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation. *Braddy v. Florida Department of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir.1998) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir.1990)). A causal connection can be established "when a

10

history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," id., or when the supervisor's improper "custom or policy ... resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991). A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir.1993) (finding no supervisory liability in the absence of such an inference).

Plaintiff claims that defendants Richie and Cushing have exercised very little control over the abusive actions of the officers under their command and have exercised indifference toward the excessive use of force thereby creating an environment where the repeated occurrences of excessive use of force incidents have become part of policy and practice by officers under their command (plaintiff's complaint attached page). In response, defendant Richie states in her sworn affidavit that she has no knowledge of plaintiff or his allegations. Defendant Richie states that she has not been involved in repeated occurrences of excessive force. She states that she has not encouraged nor tolerated that type of behavior from the officers under her command. She denies harassing anyone. Defendant Cushing states in his sworn affidavit that at no time did he allow officers under his command to use excessive force against anyone.

In his sworn affidavit in response to defendants Richie and Cushing's special report (Doc. #10), plaintiff states that when he was in the infirmary following the July 5, 2000 incident, defendant Richie came in, looked at him, cursed at him, and ended with telling him "See, we don't play". Inmate Anthony Battles states in a sworn affidavit submitted by plaintiff that he was also taken to the infirmary for treatment following the July 5, 2000 incident during which he was also affected by

11

the chemical agent sprayed on plaintiff and that while there, defendant Richie came in, walked over and said "See we don't play". Battles states further that defendant Richie and other officers were talking and laughing about the inmates being sprayed. In further support of his claim that there was a policy of using excessive force against inmates, plaintiff submitted the affidavit of inmate Robert Woods who states that on August 14, 2000, he saw Correctional Officer White escorting inmate Tyree Cochran who was handcuffed into the shift office. Inmate Woods states that he saw Officer White slapping inmate Cochran in the head and that as he passed the door of the shift office, Lieutenant Threatt come into the shift office and observed defendant Richie, Officer White, and another unnamed correctional officer slapping inmate Cochran around. Inmate Woods states that Lieutenant Threatt asked the officers what they were doing and then told them to take the handcuffs off of inmate Cochran and to let him go. Inmate Woods states further in his affidavit that he observed that defendant Richie's tenure on second shift was marked by a very aggressive and hostile attitude from the officers under her command. He states that he personally witnessed at least three assaults on the G Yard by officers that were completely unprovoked or unnecessary.  Also in support of this claim, inmate Anthony Battles states in his affidavit  that it "seemed" to be a part of the overall policy whereby the officers were extremely aggressive in dealing with people and that there were "several occasions" where officers would assault an inmate with no provocation or justification. The only incident mentioned in detail by inmate Battles is the one allegedly involving inmate Tyree Cochran.

As previously noted, a causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," id., or when the supervisor's improper "custom or policy ... resulted in deliberate

indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991). The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration . . . . *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 933 (1991). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). In this case, plaintiff has not shown evidence of widespread abuse sufficient to notify defendants Richie, Cushing, and Hooks that there was flagrant, rampant, and continued incidents of excessive use of force by officers under their command. In support of his claim, the only incident mentioned with any specificity, other than the July 5, 2000 incident involving defendant Lovvorn, was the incident involving an inmate named Tyree Cochran. Inmate Woods states that he witnessed three other incidents and inmate Battles claims that there were "several occasions" where an officer assaulted an inmate without provocation, but the inmates failed to state any details of the alleged incidents. Further, even if there were three other incidents as stated by inmate Woods, these isolated instances still would not constitute the widespread abuse necessary to put defendants Richie, Cushing, and Hooks on notice that there was a problem.

Further, as noted a causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir.1993). Plaintiff and inmate Battles contend that following the July 5, 2000, incident, defendant Richie came into the infirmary and stated "See we don't play". This statement, however, is not enough to support an inference that defendant Richie directed defendant Lovvorn to act unlawfully or that she knew that defendant Lovvorn would act unlawfully

and failed to stop him from doing so. Defendants Richie, Cushing, and Hooks are entitled to summary judgment on this claim.

<u>Defendant Hooks Failure to Properly Train Subordinates</u>

Plaintiff claims that defendant Hooks is responsible for the implementation of training and exercise of overall command at St. Clair Correctional Facility and that since he has been warden, he has created an environment whereby officers routinely engage in excessive use of force and it is allowed as part of his policy and practice in the control and supervision of the inmate population (plaintiff's complaint attached page). Defendant Hooks states in his sworn affidavit that he is extremely diligent in making sure that the uses of force are fully investigated. He states further that the majority of the use of force cases, which show the slightest merit, are referred to the Investigation and Inspection division for thorough investigation. Defendant Hooks states that he does not endorse or allow any type of harassment from officers/staff as the plaintiff alleged.

While "the doctrine of *respondeat superior* does not apply to § 1983 cases, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> [A] causal connection [between the supervisor's actions and the alleged deprivation] can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the

supervising official must be obvious, flagrant, rampant, and of continued duration .
. . .

*Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 933 (1991). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988).

Plaintiff claims that defendant Hooks failed to supervise and properly train the officers at St. Clair Correctional Facility. However, as noted in the section above, to support this claim, he has alleged with specificity only two incidents in which he claims that excessive force was unnecessarily used against an inmate by an officer. Plaintiff does not dispute Defendant Hooks sworn statements that he is extremely diligent in making sure that the uses of force are fully investigated and that the majority of the use of force cases, which show the slightest merit, are referred to the Investigation and Inspection division for thorough investigation. Plaintiff has also failed to specify how any training implemented by defendant Hooks is inadequate. Plaintiff has simply failed to establish the obvious, continuous, and widespread abuse necessary to have put defendant Hooks on notice that the officers at St. Clair Correctional Facility were routinely engaging in excessive use of force upon inmates as he claims. Consequently, defendant Hooks is entitled to summary judgment on this claim.

Confiscation of Inmates' Property

Plaintiff claims that there is an overall lack of supervisory control by defendants Richie, Hooks, and Cushing which has resulted in the illegal confiscation of inmate property. In support of his claim, plaintiff has submitted the affidavit inmate Robert Woods. In his affidavit, inmate Woods states that on June 29, 2000, he was heading to his assigned living area on his way from the law

15

library carrying a bag containing coffee and several food items. He states that as he neared his living area, defendant Lovvorn stopped him and told him to give him the items and coffee. Inmate Woods states that when he asked why he had to give up the items, defendant Lovvorn stated that it was defendant Richie's policy and that he needed to take it up with her. Inmate Woods states that although he asked for a property sheet, defendant Lovvorn refused to give him one. In her sworn affidavit, defendant Richie denies illegally confiscating any inmate's property. In his sworn affidavit, defendant Hooks states that he does not endorse or allow any type of harassment from officers/staff as the plaintiff alleged.

As previously noted, a § 1983 plaintiff may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct, or control the actions of a subordinate who causes the injury." *Pearl v. Dobbs*, 649 F.2d 608, 609 (8th Cir. 1981). "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> [A] causal connection [between the supervisor's actions and the alleged deprivation] can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration . . . .

*Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted), *cert. denied*, 500 U.S. 933 (1991). "A single incident, or isolated incidents, do not ordinarily satisfy this burden." *Williams v. Willits*, 853 F.2d 586, 588 (8th Cir. 1988). In this action, although plaintiff claims that an overall

lack of supervisory control has resulted in the illegal confiscation of inmate property, he only lists two incidents in which inmate property was allegedly confiscated. He contends that defendant Lovvorn wanted to confiscate his property on July 5, 2000 and that defendant Lovvorn confiscated inmate Woods property on June 29, 2000. As noted, the deprivations that constitute widespread abuse sufficient to notify the supervision official that there is a problem must be obvious, flagrant, rampant, and of continued duration. A single incident or isolated incidents do not ordinarily satisfy this burden. The two incidents cited by plaintiff are simply not enough to put the defendants on notice that correctional officers under their command and control were unlawfully confiscating inmates' property. Defendants Richie, Cushing, and Hooks are entitled to summary judgment on this claim.

Harassment of Members of the Yahweh Temple and the Hebrew-Israelite Community

Plaintiff claims that there is an overall lack of supervisory control by defendants Richie, Hooks, and Cushing which has resulted in the harassment of members of the Yahweh Temple. He claims that such conduct has not been applied to members of the Christian based religions (plaintiff's complaint attached page). Plaintiff claims further that since he became warden, defendant Hooks has continued the practice of allowing the harassment of the Yahweh-Hebrew-Israelite Community by his staff and supervisors. He claims that defendant Hooks has embraced the policies which have subjected the Yahweh members to be treated differently and inferior in nature to members of the Christian community at large.

Defendant Richie states in her affidavit that she has not harassed members of the Yahweh Temple or any other Christian group. She denies harassing anyone. Defendant Cushing states in his sworn affidavit that he never harassed any member of any religious group. Defendant Hooks states

17

in his sworn affidavit that he does not endorse or allow any type of harassment from officers/staff as the plaintiff alleged. He states further that he has not embraced any policies which have subjected the Yahweh members to be treated in an inferior manner.

Prisoners retain their first amendment rights, including the right to the free exercise of religion, to the extent that these rights are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. *O'lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). However, the plaintiff need not be provided his preferred means of practicing his religion and prison officials are to be afforded latitude in the management of prison affairs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). All that is required of the prison administration is that the plaintiff be afforded a "reasonable opportunity" to practice his chosen religion. *Hudson v. Palmer*, 468 U.S. 517 (1984); *citing Cruz v. Beto*, 405 U.S. 319 (1972). In the present case, plaintiff has not alleged facts which show that his First Amendment right to practice his religion has been infringed by the prison administration. In his complaint, plaintiff does not allege that he has not been allowed to practice his religion. In fact, it is clear from his complaint, that he is allowed to attend Yahweh religious services, because he states that he was on his way to the religious services when he encountered defendant Lovvorn on July 5, 2000. Thus, the facts presented in the plaintiff's complaint do not show that prison officials have violated his First Amendment rights by denying him a reasonable opportunity to attend worship services.

Further, plaintiff states in his complaint only that members of the Yahweh Temple were harassed. He does not state in his complaint how the members were harassed and, most importantly as stated above, he does not state that the harassment prevented him from attending the Yahweh

18

services. With respect to plaintiff's harassment claims, it is well established that verbal harassment or abuse does not state a constitutional violation. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979). Words, threats and harassment are simply not actionable as violations of the Constitution. *Jones v. Superintendent*, 370 F.Supp. 488, 491 (W.D.Va. 1974), *citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973). *See also Stacey v. Ford*, 554 F.Supp. 8 (N.D.Ga. 1982).

Further, although plaintiff claims that Christian based communities are not harassed, he fails to state any facts to substantiate his claims. He claims further that defendant Hooks has embraced the policies which have subjected the Yahweh members to be treated differently and inferior in nature to members of the Christian community at large, but he fails to state how they are treated differently and inferiorly. Plaintiff's claims are due to be dismissed because plaintiff's allegations are vague and conclusory, *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984), and without factual basis, *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

The court notes that in his affidavit in response to defendants Richie and Cushing's special report, plaintiff elaborates on his claim. These additional claims are not part of plaintiff's complaint, but the court will briefly address them. Plaintiff contends that members of the Hebrew-Israelite Community of which he has been a Bishop for several years have been subjected to strip searches and harassment such as shaving powder being dumped in meeting rooms, constant monitoring by placing officers in the meetings, and not being allowed to conduct services in a "regular manner". As noted, prisoners retain their first amendment rights, including the right to the free exercise of religion, to the extent that these rights are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system. *O'lone v. Estate of Shabazz*, 482 U.S.

19

342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).  The fact that a prisoner may be subjected to a strip search and that correctional officers may monitor the meetings do not appear to the court to be harassment. It appears that they are both related to security concerns which is a legitimate penological objective of the corrections system. As noted,  prison officials are to be afforded latitude in the management of prison affairs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Plaintiff also complains about shaving powder being dumped in the meeting room, but he does not elaborate as to how this would interfere with his right to practice his religion. In addition, plaintiff does not elaborate on his statement that the members of the Hebrew-Israelite Community are not allowed to conduct their services in a regular manner. However, the court notes that the important thing is that they are allowed to conduct their services and plaintiff does not deny this fact. It is clear that the prison administration is affording plaintiff a "reasonable opportunity" to practice his chosen religion. *See Hudson v.* Palmer, 468 U.S. 517 (1984); *citing Cruz v. Beto*, 405 U.S. 319 (1972).  Defendants Ritchie, Cushing, and Hooks are entitled to summary judgment on these claims.

## CONCLUSION

The Court EXPRESSLY FINDS that there are no genuine issues of material fact and that the defendants are entitled to judgment as a matter of law.  Accordingly, defendants' motions for summary judgment are due to be GRANTED and this action is due to be DISMISSED WITH PREJUDICE.  A Final Judgment will be entered.

The Clerk is DIRECTED to serve a copy of this Memorandum Opinion upon the plaintiff and upon counsel for the defendants.

DATED this 3rd day of October, 2005.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**